[No. B201786. Second Dist., Div. Five. May 27, 2009.]

GUADALUPE LIMA, a Minor, etc., Plaintiff and Appellant, v.
STEVE VOUIS et al., Defendants;
DAVID MAXWELL-JOLLY, as Director, etc., Claimant and Respondent.

**COUNSEL**

Law Offices of Michels & Watkins, Philip Michels, Shirley K. Watkins, Paul Sowa and Steven Stevens for Plaintiff and Appellant.

Edmund G. Brown, Jr., Attorney General, Douglas M. Press, Assistant Attorney General, Richard T. Waldow and Janet E. Burns, Deputy Attorneys General, for Claimant and Respondent.

**OPINION**

**MOSK, J.—**

## INTRODUCTION

As part of a proposed medical malpractice settlement that did not allocate the proceeds to categories of damages, plaintiff and appellant Guadalupe Lima (plaintiff) made a motion to extinguish a portion of a Medicaid lien asserted by the Department of Health Services (DHS).[1] In ruling on the

---

[1] In July 2007, while this matter was pending before the trial court, the State Department of Health Services was renamed the State Department of Health Care Services. (Health & Saf. Code, § 20.)

motion to extinguish the lien, the trial court made findings, including the reasonableness of the amount of plaintiff's total damages claimed and of the settlement, as well as the amount of plaintiff's past medical expenses. Nevertheless, the trial court denied plaintiff's motion to extinguish the DHS lien, without determining the portion of the settlement proceeds allocable to plaintiff's past medical expenses. In doing so, the trial court failed to follow the federal requirements as enunciated in *Arkansas Dept. of Health and Human Servs. v. Ahlborn* (2006) 547 U.S. 268 [164 L.Ed.2d 459, 126 S.Ct. 1752] (*Ahlborn*). Accordingly, we reverse the trial court's ruling on the amount of the Medicaid lien recovery and remand the matter with instructions to make the required allocation consistent with the trial court's findings.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff, a minor, was born prematurely and, as a result, suffers from cerebral palsy. Because plaintiff qualified for benefits under the California Medicaid[2] plan, known as Medi-Cal,[3] DHS paid in excess of $435,000 for plaintiff's medical care. In conformity with California law (Welf. & Inst. Code, § 14124.74),[4] DHS asserted a lien on any recovery from defendant in the amount of the medical costs it had paid on behalf of plaintiff, minus certain statutory deductions.

On December 15, 2005, plaintiff, through her mother as guardian ad litem, filed a complaint against defendant Steve Vouis, M.D. (defendant), for "medical negligence." According to plaintiff, defendant provided "[n]egligent obstetrical care [to] plaintiff's mother including failure to properly recognize mother's RH negative blood, improper antibody screening, [as well as providing] negligent treatment of mother for her hospital and prenatal care[,]

---

[2] Title 42 United States Code sections 1396 to 1396v. " '*Medicaid* (42 U.S.C., § 1396 et seq. [tit. XIX of the Social Security Act; "Grants to States For Medical Assistance Programs"])' is a federal program that enables states to provide medical assistance to impoverished individuals who are aged, blind, disabled, or families with dependent children. (*Mission Community Hospital v. Kizer* (1993) 13 Cal.App.4th 1683, 1688 [17 Cal.Rptr.2d 303].) ' " 'The program is optional, but once a state decides to participate it must comply with the federal government's requirements, listed at 42 U.S.C. § 1396a.' [Citations.]" ' " (*Shewry v. Arnold* (2004) 125 Cal.App.4th 186, 193 [22 Cal.Rptr.3d 488].)

[3] Welfare and Institutions Code section 14000 et seq. " 'The Medi-Cal program is the California implementation of the federal Medicaid program . . . . [The Department] is the state agency charged with administration of the Medi-Cal program.' [Citation.] 'As a *Medicaid* program, California's Medi-Cal program must therefore conform to federal *Medicaid* statutes and regulations. [Citation.]' [Citation.]" (*Shewry v. Arnold, supra*, 125 Cal.App.4th at p. 193.)

[4] See 42 United States Code Annotated section 1396a(a)(25) (States participating in Medicaid must seek reimbursement from third parties legally liable for medical expenses of individuals who receive Medicaid funds.).

failure to administer Rhogam, failure to give proper counseling, [and provid-ing] negligent care to [plaintiff] the newborn." Defendant answered the complaint on March 8, 2006.

On March 2, 2007, plaintiff filed a petition for approval of a compromise of her claim against defendant and to extinguish or strike the DHS lien to the extent it exceeded $21,446.45 (motion to extinguish). Plaintiff described her injuries as "[c]erebral palsy secondary to prematurity, manifested by global developmental delay and gait disturbance . . . ." She indicated that defendant had offered to pay $950,000 by "way of settlement." She also explained that DHS had claimed a lien in the amount of $319,275.30, that plaintiff disputed that amount under *Ahlborn, supra,* 547 U.S. 268, and that DHS was entitled to only $21,446.45.

In her petition, plaintiff detailed the various economic components of the $950,000 settlement amount as follows:

"A. $50,000 to [plaintiff's mother] for her individual claim for the prospec-tive wrongful death of [her] daughter.

"B. Periodic payments for the benefit of [plaintiff] in the initial amount of $2,046.33 per month, beginning on June 11, 2021 (age 18). The payments will be made for the life of [plaintiff], increasing at 3% per annum and be guaranteed for 20 years. The last guaranteed payment will be made on May 11, 2041. The payments will be made by Prudential Life Insurance Company, or its assign (A.M. Best rated A+ 15-Superior). The cost of providing these payments is $300,000.00. The guaranteed benefit is $659,828.00. The ex-pected benefit is $1,924,978.00. The remaining guaranteed payments after the death of [plaintiff] (if any) will be made to [plaintiff's] mother.

"C. $600,000.00 up-front cash for the benefit of [plaintiff]."[5]

At the same time plaintiff filed her petition to approve the compromise, she also filed her motion to extinguish. Relying on *Ahlborn, supra,* 547 U.S. 268, plaintiff argued that her "over all damages were $14 million"[6] and that DHS's

---

[5] From the $600,000 up-front cash, $234,266.57 in attorney fees and costs was to be deducted, as well as the DHS lien, which plaintiff calculated to be $21,446.45, leaving net proceeds of up-front cash in the amount of $344,286.98 to be paid into a special needs trust.

[6] Plaintiff explained that her "damages for pain and suffering are undoubtedly greater than $250,000, but Civil Code section 3333.2 limits her recovery to $250,000. [¶] The value of [plaintiff's] overall damages, therefore, is calculated by adding the past medical costs, the intermediate present value of future medical costs, the intermediate present value of loss of earning capacity and the general damages: [¶] Past Medical Costs: $435,395.63; Future Costs: $12,941,631; Loss of Earning Capacity: $450,145; General Damages: $250,000; *Overall Value of Damages*: $14,077,171.63."

lien should be "reduced in the same proportion that the [$950,000] settlement has to plaintiff's overall damages." According to plaintiff, the $950,000[7] settlement amount was 6.75 percent of her total damages of $14 million. Therefore, plaintiff calculated that the DHS lien should be reduced to approximately $21,000.[8] Plaintiff supported her motion with three declarations from (i) a board-certified physician specializing in rehabilitation medicine; (ii) an economist specializing in damage valuations; and (iii) plaintiff's attorney.

On April 5, 2007, DHS filed its opposition to the motion to extinguish. It argued that plaintiff had misinterpreted *Ahlborn, supra*, 547 U.S. 268, which, according to DHS, decided only " 'whether [Arkansas] can lay claim to more than the portion of [the plaintiff's] settlement that represents medical expenses.' " Although DHS objected to each of the declarations submitted in support of plaintiff's motion to extinguish, it did not submit any evidence or argument to rebut plaintiff's calculation of her overall damages or any element thereof.

On April 18, 2007, the trial court held a hearing on both the motion to extinguish and the petition to approve the minor's compromise. The trial court sustained DHS's objection to the declaration of plaintiff's attorney and struck that declaration, but overruled the objections to the declarations of the physician and the economist. Based on those declarations and the attached documents, the trial court made the following findings: "I find your overall assessment of the case reasonable. I find your overall breakdown of damages. I'll put them in the record if you decide to appeal: [¶] Past medical costs $435,395. I'm dropping all the cents. [¶] Future medical care: . . . $12,941,63[1]. [¶] Loss of earning capacity: $450,145. [¶] General damages as damages to MICRA: $250,000. [¶] Your total claim would be $14,077,17[1]. That would be your total overall claim, including future damages."

---

[7] As noted above, $50,000 of the settlement was for the potential wrongful death claim of plaintiff's mother. Nevertheless, plaintiff made her calculation based on the figure of $950,000, and agreed to be bound by that figure, even though it leads to a result slightly more favorable to DHS.

[8] Plaintiff detailed her calculation of the lien as follows: "[DHS] has asserted a lien for $435,395.63, the amount it claims it paid in benefits. The settlement of $950,000 is 6.748 percent of $14,077,171.63, the value of [plaintiff's] overall damages. Using that ratio, 6.748 percent of $435,395.63 is $29,380.52. [DHS]'s lien must be further reduced by $7,345.16, which is [*sic*] accounts for a 25% attorneys fee, as provided by Welfare & [*sic*] Institutions Code section 14124.72(d). [¶] The lien is reduced once more, so that [DHS] shares in the costs of the litigation. The costs of the litigation are $19,059.49. [DHS]'s lien (before discount for attorneys fees) is $29,380.52, which is 3.09 percent of the total settlement. Therefore, [DHS]'s share of the costs is [$]588.94 (3.09 percent of $19,059.49), which is deducted from the lien. [¶] [DHS]'s lien, after pro-rata reduction, and reduction for attorney fees and costs, is: DHS Lien: $29,380.52; Attorneys Fees: $7,345.13; Costs: $588.94; *Total DHS Lien*: $21,446.45."

After hearing argument, the trial court denied the motion to extinguish. The hearing then proceeded to the petition for approval of the minor's compromise. At the beginning of the discussion of the petition, the trial court noted that "[t]his is without prejudice to appealing." After a brief discussion of the petition to approve the minor's compromise, the trial court decided to continue the hearing on the petition, stating,[9] "As much as I would like to go forward, I think it's important for you to crunch the numbers, talk to [the guardian ad litem] about them, and see what you can do with the money you have left. [¶] You may make a decision to sever and appeal with the lien number. [¶] . . . [¶] So we'll just treat this as the [hearing on] the minor's [petition for approval of the compromise] being continued to [May 23, 2007]." Neither party submitted a formal order on the motion to extinguish or gave notice of ruling on the motion.

Prior to the continued hearing on the petition for approval of the minor's compromise, plaintiff filed an amendment to her petition that indicated the amount of the DHS lien was $319,275.30.[10] Plaintiff also indicated that the $300,000 portion of the settlement originally designated for the purchase of an annuity was now being contributed to the up-front cash portion of the settlement to fund the special needs trust. At the continued hearing on the amended petition, which was advanced to May 14, 2007, the trial court approved the proposed settlement and granted the petition.

On June 20, 2007, defendant filed a dismissal of the action with prejudice that had previously been executed by plaintiff's counsel and delivered to defendant's counsel on March 6, 2007, in anticipation of the approval of the original petition. On June 29, 2007, plaintiff's counsel served on defendant and DHS a proposed order regarding plaintiff's motion to extinguish or strike DHS lien. Among other things, the proposed order recited the trial court's findings concerning plaintiff's assessment and breakdown of her overall damages. The proposed order further provided that if plaintiff filed and proceeded with an amended petition for approval of the minor's compromise, "such filing and proceeding with the petition will be without prejudice to [plaintiff's] right to appeal from [the trial court's] order denying the motion to extinguish or strike the DHS lien . . . ."

On July 12, 2007, DHS served objections to plaintiff's proposed order on the motion to extinguish. According to DHS, the trial court did not agree at the April 18, 2007, hearing that plaintiff could appeal from the order

---

[9] The reporter's transcript attributes the first two sentences of the following quote to plaintiff's counsel, but it appears from the context that the remarks were made by the trial court.

[10] Plaintiff's original petition listed the amount of the DHS lien as $21,446.45, presumably based on her expectation that she would prevail on her motion to extinguish.

denying the motion in the event she elected to proceed with the settlement. DHS also asserted that because plaintiff agreed to the terms of the amended petition to approve the compromise of her claim, including the DHS lien amount, "there [were] no additional orders for the court to make."

On July 18, 2007, pursuant to Code of Civil Procedure section 473, plaintiff filed a motion to vacate the dismissal. According to plaintiff's counsel, "[t]hrough inadvertence, mistake and neglect, [he] temporarily overlooked the fact that the signed request for dismissal had been in the hands of defense counsel since early [April 2007], two and a half months before defense counsel filed it on [June 20, 2007]; overlooked the fact that under [California Rules of Court, rule] 3.1312, the court was required to make a written order [regarding] its [April 18, 2007,] ruling denying plaintiff's motion [to extinguish] the DHS lien; and overlooked the fact that the filing of the voluntary dismissal would deprive the court of jurisdiction over the case and bar the court from signing a written order for the [April 18, 2007,] ruling denying plaintiff's motion [to extinguish] the DHS lien, unless and until the dismissal were [*sic*] vacated."

On August 9, 2007, the trial court granted plaintiff's motion to vacate the dismissal[11] "for purposes of allowing the court to sign a written order for the [April 18, 2007,] hearing . . . ." The trial court also revised, signed, and filed plaintiff's proposed order denying her motion to extinguish.[12]

On August 23, 2007, plaintiff filed a notice of appeal from the trial court's orders entered on April 18, 2007, and August 9, 2007.

## DISCUSSION

### A. *Appealability and Waiver*

Plaintiff contends that the trial court's order denying her motion to extinguish is appealable because it resolved all of the issues between plaintiff

---

[11] DHS filed a motion to augment the record on appeal to include a copy of its opposition to plaintiff's motion to vacate the dismissal. The copy of the opposition attached to DHS's motion, however, is not file stamped, but rather stamped "received"; does not show proof of service on plaintiff; and does not appear in the case summary of the trial court proceedings submitted with the record on appeal. We therefore deny the motion on the grounds that DHS has failed to establish that the opposition in question was properly before the trial court on the motion to vacate.

[12] Although the trial court indicated at the August 9, 2007, hearing that it intended to reinstate the dismissal once the court signed the written order for the April 18, 2007, hearing, there is no indication in the record that the dismissal with prejudice was ever reinstated.

and DHS. In support of this contention, she cites *McClearen v. Superior Court* (1955) 45 Cal.2d 852, 856 [291 P.2d 449]; *Hersch v. Boston Ins. Co.* (1959) 175 Cal.App.2d 751, 753–754 [346 P.2d 796]; and *Trimble v. Steinfeldt* (1986) 178 Cal.App.3d 646, 649–650 [224 Cal.Rptr. 195]. Plaintiff also cites to Welfare and Institutions Code section 14124.76, subdivision (b),[13] which was amended after the trial court entered its written order denying plaintiff's motion to extinguish to provide that either party to a "reimbursement determination motion" made under Welfare and Institutions Code section 14124.76, subdivision (a)[14] may file an appeal from a trial court's order on that motion.

Under established case law, cited by plaintiff, the order denying plaintiff's motion to extinguish is appealable as a final collateral order directing the payment of money. (*McClearen v. Superior Court, supra*, 45 Cal.2d at p. 856; see Eisenberg et al., Cal. Practice Guide: Civil Appeals and

---

[13] Welfare and Institutions Code section 14124.76, subdivision (b), which was amended effective August 24, 2007, provides: "If the beneficiary has filed a third-party action or claim, the court where the action or claim was filed shall have jurisdiction over a dispute between the director and the beneficiary regarding the amount of a lien asserted pursuant to this section that is based upon an allocation of damages contained in a settlement or compromise of the third-party action or claim. If no third-party action or claim has been filed, any superior court in California where venue would have been proper had a claim or action been filed shall have jurisdiction over the motion. The motion may be filed as a special motion and treated as an ordinary law and motion proceeding and subject to regular motion fees. *The reimbursement determination motion* shall be treated as a special proceeding of a civil nature pursuant to Part 3 (commencing with Section 1063) of the Code of Civil Procedure. When no action is pending, the person making the motion shall be required to pay a first appearance fee. When an action is pending, the person making the motion shall pay a regular law and motion fee. Notwithstanding Section 1064 of the Code of Civil Procedure, *either the beneficiary or the director may appeal the final findings, decision, or order*." (Italics added.)

[14] Welfare and Institutions Code section 14124.76, subdivision (a) provides: "No settlement, judgment, or award in any action or claim by a beneficiary to recover damages for injuries, where the director has an interest, shall be deemed final or satisfied without first giving the director notice and a reasonable opportunity to perfect and to satisfy the director's lien. Recovery of the director's lien from an injured beneficiary's action or claim is limited to that portion of a settlement, judgment, or award that represents payment for medical expenses, or medical care, provided on behalf of the beneficiary. All reasonable efforts shall be made to obtain the director's advance agreement to a determination as to what portion of a settlement, judgment, or award that represents payment for medical expenses, or medical care, provided o[n] behalf o[f] the beneficiary. Absent the director's advance agreement as to what portion of a settlement, judgment, or award represents payment for medical expenses, or medical care, provided on behalf of the beneficiary, the matter shall be submitted to a court for decision. *Either the director or the beneficiary may seek resolution of the dispute by filing a motion*, which shall be subject to regular law and motion procedures. In determining what portion of a settlement, judgment, or award represents payment for medical expenses, or medical care, provided on behalf of the beneficiary and as to what the appropriate reimbursement amount to the director should be, the court shall be guided by the United States Supreme Court decision in *Arkansas Department of Health and Human Services v. Ahlborn*[, *supra*,] 547 U.S. 268 and other relevant statutory and case law." (Italics added.)

Writs (The Rutter Group 2008) ¶¶ 2:76 to 2:77, pp. 2-44 to 2-45 (rev. # 1, 2003); 9 Witkin, Cal. Procedure (5th ed. 2008) Appeal, § 106, pp. 169–170.) Although DHS did not intervene in the action, it is nevertheless considered a party to the action by virtue of its lien claim. "A lien claimant is obviously a party to the proceeding on his motion for a lien, even though he does not seek by intervention to become a party to the main action . . . ." (*McClearen v. Superior Court, supra,* 45 Cal.2d at p. 856.) Therefore, because the denial of plaintiff's motion to extinguish constituted a final determination as to the only issue between DHS and plaintiff—the amount of the DHS lien to be recovered from the settlement proceeds—it resolved all of the issues between the parties to this appeal and constituted an appealable order.[15] (45 Cal.2d at p. 856.)

DHS does not contest that the order denying the motion to extinguish is an appealable order, but instead argues that plaintiff waived her right to appeal by proceeding with the compromise of her claim *after* DHS's lien rights were established and then dismissing the action with prejudice. According to defendant, that compromise and dismissal deprived the trial court of jurisdiction to enter the subsequent written order on the motion to extinguish that, inter alia, expressly preserved plaintiff's right to appeal.

■  DHS did not cross-appeal from the order vacating the dismissal and is therefore prevented from challenging the validity of that order on appeal. (See *Estate of Powell* (2000) 83 Cal.App.4th 1434, 1439 [100 Cal.Rptr.2d 501] ["As a general matter, 'a respondent who has not appealed from the judgment may not urge error on appeal.' "].) Nevertheless, DHS contends that because the dismissal was entered, the trial court lacked the jurisdiction to rule on plaintiff's motion to vacate and that a challenge to an order based on lack of jurisdiction can be raised at any time.  ■  But Code of Civil Procedure section 473 expressly authorizes a trial court to vacate a dismissal order under certain circumstances.[16] Thus, the trial court had jurisdiction to hear the motion to vacate notwithstanding the dismissal, and, due to DHS's failure to cross-appeal, the trial court's decision on the merits of that motion cannot now be challenged on appeal. Because the trial court vacated the dismissal and entered nunc pro tunc a written order expressly preserving

---

[15] Based on our conclusion that the trial court's order denying the motion to extinguish is an appealable order, there is no need to address the effect that Welfare and Institutions Code amended section 14124.76, subdivision (b) (which became effective shortly after the notice of appeal was filed) has on the appealability issue.

[16] Code of Civil Procedure section 473, subdivision (b) provides: "*The court may,* upon any terms as may be just, *relieve a party* or his or her legal representative *from a* judgment, *dismissal,* order, or other proceeding *taken against him or her* through his or her mistake, inadvertence, surprise, or excusable neglect." (Italics added.)

plaintiff's right to appeal from the order denying the motion to extinguish, plaintiff did not waive her right to appeal.[17]

### B.   *Standard of Review*

Plaintiff's challenge to the trial court's ruling on her motion to extinguish is based on undisputed facts and raises a question concerning the proper interpretation of the Supreme Court's holding in *Ahlborn, supra,* 547 U.S. 268 and the federal statutes upon which that decision is based. It therefore raises a question of law that we review de novo. (*Ghirardo v. Antonioli* (1994) 8 Cal.4th 791, 799 [35 Cal.Rptr.2d 418, 883 P.2d 960]; *California Teachers Assn. v. San Diego Community College Dist.* (1981) 28 Cal.3d 692, 699 [170 Cal.Rptr. 817, 621 P.2d 856].)

### C.   *Statutory Scheme*

"The Medicaid program, which provides joint federal and state funding of medical care for individuals who cannot afford to pay their own medical costs, was launched in 1965 with the enactment of Title XIX of the Social Security Act (SSA), as added, 79 Stat. 343, 42 U.S.C. § 1396 et seq. (2000 ed. and Supp. III). Its administration is entrusted to the Secretary of Health and Human Services (HHS), who in turn exercises his authority through the Centers for Medicare and Medicaid Services (CMS). [Fn. omitted.]" (*Ahlborn, supra,* 547 U.S. at p. 275.)

"States are not required to participate in Medicaid, but all of them do. The program is a cooperative one; the Federal Government pays between 50% and 83% of the costs the State incurs for patient care, and, in

---

[17] In her reply brief, plaintiff discusses the recent decision in *Espericueta v. Shewry* (2008) 164 Cal.App.4th 615 [79 Cal.Rptr.3d 517] and argues that case has no applicability to the waiver issue. We agree. In *Espericueta,* four months after *Ahlborn, supra,* 547 U.S. 268, was decided, the trial court entered an order approving a minor's compromise allowing the full amount of the DHS lien, less statutory deductions for attorney fees and costs. (*Espericueta v. Shewry, supra,* 164 Cal.App.4th at pp. 619–620.) Six months later, the plaintiff filed a motion to extinguish or strike the lien based on *Ahlborn.* (*Espericueta,* at pp. 620–621.) The trial court denied the motion, and the Court of Appeal affirmed on the grounds that the compromise, including the amount of the DHS lien, had been approved, and the trial court did not retain jurisdiction to reallocate the amount of the DHS lien. (*Id.* at p. 626.) The Court of Appeal also emphasized the plaintiff's failure to introduce at the time of the earlier hearing on the minor's compromise the evidence she ultimately submitted in support of her belated motion to extinguish. (*Id.* at p. 627.) Accordingly, the court found "no error in the trial court's rejection of [the plaintiff's] proffered evidence and denial of the motion to extinguish or strike the Department's lien." (*Ibid.*) The holding in *Espericueta* that there was no basis to modify the order approving the compromise has no application to the waiver issue because here the trial court had jurisdiction under Code of Civil Procedure section 473 to vacate the dismissal and enter the written order denying the motion to extinguish nunc pro tunc.

return, the State pays its portion of the costs and complies with certain statutory requirements for making eligibility determinations, collecting and maintaining information, and administering the program. See § 1396a. [¶] One such requirement is that the state agency in charge of Medicaid . . . 'take all reasonable measures to ascertain the legal liability of third parties . . . to pay for care and services available under the plan.' § 1396a(a)(25)(A) (2000 ed.). The agency's obligation extends beyond mere identification, however; [¶] 'in any case where such a legal liability is found to exist after medical assistance has been made available on behalf of the individual and where the amount of reimbursement the State can reasonably expect to recover exceeds the costs of such recovery, the State or local agency will seek reimbursement for such assistance to the extent of such legal liability.' § 1396a(a)(25)(B)." (*Ahlborn, supra,* 547 U.S. at pp. 275–276, fns. omitted.)

"To facilitate its reimbursement from liable third parties, the State must, 'to the extent that payment has been made under the State plan for medical assistance in any case where a third party has a legal liability to make payment for such assistance, [have] in effect laws under which, to the extent that payment has been made under the State plan for medical assistance for health care items or services furnished to an individual, the State is considered to have acquired the rights of such individual to payment by any other party for such health care items or services.' § 1396a(a)(25)(H)." (*Ahlborn, supra,* 547 U.S. at p. 276.)

"The obligation to enact assignment laws is reiterated in another provision of the SSA, which reads as follows: [¶] '(a) For the purpose of assisting in the collection of medical support payments and other payments for medical care owed to recipients of medical assistance under the State plan approved under this subchapter, a State plan for medical assistance shall—[¶] (1) provide that, as a condition of eligibility for medical assistance under the State plan to an individual who has the legal capacity to execute an assignment for himself, the individual is required—[¶] (A) to assign the State any rights . . . to support (specified as support for the purpose of medical care by a court or administrative order) and to payment for medical care from any third party; [¶] (B) to cooperate with the State . . . in obtaining support and payments (described in subparagraph (A)) for himself . . . ; and [¶] (C) to cooperate with the State in identifying, and providing information to assist the State in pursuing, any third party who may be liable to pay for care and services available under the plan . . . .' § 1396k(a)." (*Ahlborn, supra,* 547 U.S. at pp. 276–277.)

### D. Ahlborn

Plaintiff contends that the decision in *Ahlborn, supra*, 547 U.S. 268 required the trial court to determine the portion of the proposed settlement that should be allocated to payment of plaintiff's past medical expenses using a formula based on the ratio of the amount of the settlement to the amount of plaintiff's total damages. According to plaintiff, the trial court ignored the controlling precedent in *Ahlborn* by failing to make the required allocation.

In *Ahlborn, supra*, 547 U.S. 268, Heidi Ahlborn, a 19-year-old college student, suffered brain damage as the result of a car accident. (*Id.* at pp. 272–273.) Because her assets were insufficient to pay for her medical care, the Arkansas Department of Health and Human Services (ADHS) determined that she was eligible for Medicaid assistance and paid providers $215,645.30 on her behalf under Arkansas's Medicaid plan. (*Id.* at p. 273.) ADHS sent Ahlborn's attorney periodic letters advising him about Medicaid outlays and that ADHS had a claim for reimbursement from any settlement, judgment, or award that Ahlborn might obtain from a third party responsible for her injuries. (*Ibid.*)

Ahlborn sued two alleged tortfeasors in state court seeking compensation for the injuries she suffered in the car accident. (*Ahlborn, supra*, 547 U.S. at p. 273.) In addition to seeking damages for past medical costs, Ahlborn sought damages for permanent physical injuries, future medical expenses, past and future pain and suffering, and past and future lost earnings. (*Ibid.*)

ADHS intervened in Ahlborn's state court action to assert a lien on any proceeds recovered from the alleged third party tortfeasors. (*Ahlborn, supra*, 547 U.S. at p. 274.) The case eventually settled for $550,000, but the parties did not allocate the settlement between or among categories of damages. (*Ibid.*) ADHS did not participate in the settlement negotiations or seek to reopen the judgment after the case had been dismissed. (*Ibid.*) But ADHS continued to assert a lien against the settlement proceeds in the total amount of the cost it paid for Ahlborn's care—i.e., $215,645.30. (*Ibid.*)

Ahlborn filed an action in the federal district court seeking a declaration that the lien violated federal Medicaid laws to the extent it sought recovery from compensation for injuries other than past medical expenses. (*Ahlborn, supra*, 547 U.S. at p. 274.) The parties stipulated that the value of Ahlborn's total claim was $3,040,708.12; that the settlement was approximately one-sixth of that total; and that the portion of the settlement allocable to past

medical expenses was $35,581.47.[18] (547 U.S. at p. 274.) The district court ruled that under Arkansas law, ADHS was entitled to recover the entire lien amount of $215,645.30. (*Ibid.*) The Court of Appeals, however, reversed, holding that ADHS was entitled to recover only that portion of the settlement that represented payments for medical care. (*Id.* at p. 275.)

■ In affirming the decision of the Court of Appeals, the Supreme Court in *Ahlborn, supra,* 547 U.S. 268 explained that "the Arkansas statute [allowing a lien recovery from the entire amount of the settlement proceeds], if enforceable against Ahlborn, authorizes imposition of a lien on her settlement proceeds in the amount of $215,645.30. Ahlborn's argument before the District Court, the Eighth Circuit, and this Court has been that Arkansas law goes too far. We agree. *Arkansas'[s] statute finds no support in the federal third-party liability provisions, and in fact squarely conflicts with the anti-lien provision of the federal Medicaid laws.*" (*Id.* at pp. 279–280, italics added.)

In reaching its conclusion, the court in *Ahlborn, supra,* 547 U.S. 268, rejected ADHS's arguments that the third party lien provisions of the Medicaid law supported the district court's ruling that ADHS was entitled to the entire lien amount from the settlement proceeds. "ADHS points to § 1396a(a)(25)(B)'s requirement that States 'seek reimbursement for [medical] assistance *to the extent of such legal liability*' (emphasis added) and suggests that this means that the entirety of a recipient's settlement is fair game. In fact, as is evident from the context of the emphasized language, 'such legal liability' refers to 'the legal liability of third parties . . . *to pay for care and services available under the plan.*' § 1396a(a)(25)(A) (emphasis added). Here, the tortfeasor has accepted liability for only one-sixth of the recipient's overall damages, and ADHS has stipulated that only $35,581.47 of that sum represents compensation for medical expenses. Under the circumstances, the relevant 'liability' extends no further than that amount." (*Ahlborn, supra,* 547 U.S. at pp. 280–281.)

According to the court in *Ahlborn, supra,* 547 U.S. 268, under the third party lien provisions of the Medicare law "the State must be assigned 'the rights of [the recipient] to payment by any other party *for such health care items or services.*' § 1396a(a)(25)(H) (emphasis added). Again, the statute does not sanction an assignment of rights to payment for anything other than medical expenses—not lost wages, not pain and suffering, not an inheritance. [¶] . . . The 'amount recovered . . . under an assignment' is not, as ADHS

[18] In a footnote, the significance of which the parties dispute (see pp. 259–260, *post*), the court in *Ahlborn, supra,* 547 U.S. 268, observed that "[t]he effect of the stipulation is the same as if a trial judge had found that Ahlborn's damages amounted to $3,040,708.12 (of which $215,645.30 were for medical expenses), but because of her contributory negligence, she could only recover one-sixth of those damages." (*Id.* at p. 281, fn. 10.)

assumes, the entire settlement; as explained above, under the federal statute the State's assigned rights extend only to recovery of payments for medical care. Accordingly, what § 1396k(b) requires is that the State be paid first out of any damages representing payments for medical care before the recipient can recover any of her own costs for medical care. [Fn. omitted.]" (*Ahlborn, supra,* 547 U.S. at pp. 281–282.)

■ The court in *Ahlborn, supra,* 547 U.S. 268 also reasoned that the antilien provision of the Medicaid law supported its conclusion that ADHS's recovery was limited to that portion of the settlement attributable to medical expenses. "[T]he federal statute places express limits on the State's powers to pursue recovery of funds it paid on the recipient's behalf. These limitations are contained in 42 U. S. C. §§1396a(a)(18) and 1396p. Section 1396a(a)(18) requires that a State Medicaid plan comply with §1396p, which in turn prohibits States (except in circumstances not relevant here) from placing liens against, or seeking recovery of benefits paid from, a Medicaid recipient: [¶] . . . [¶] . . . There is no question that the State can require an assignment of the right, or chose in action, to receive payments for medical care. So much is expressly provided for by §§1396a(a)(25) and 1396k(a). And we assume, as do the parties, that the State can also demand as a condition of Medicaid eligibility that the recipient 'assign' in advance any payments that may constitute reimbursement for medical costs. To the extent that the forced assignment is expressly authorized by the terms of §§1396a(a)(25) and 1396k(a), it is an exception to the anti-lien provision. See *Washington State Dept. of Social and Health Servs. v. Guardianship Estate of Keffeler,* 537 U.S. 371, 383–385, and n. 7 [154 L.Ed.2d 972, 123 S.Ct. 1017]. But that does not mean that the State can force an assignment of, or place a lien on, any other portion of Ahlborn's property. As explained above, the exception carved out by §§1396a(a)(25) and 1396k(a) is limited to payments for medical care. Beyond that, the anti-lien provision applies." (*Id.* at pp. 282–284.)

Based on its analysis of the Medicaid law's third party lien and antilien provisions, the court in *Ahlborn, supra,* 547 U.S. 268 concluded that ADHS's lien recovery was limited to that portion of Ahlborn's settlement proceeds that were meant to compensate her for past medical costs. "Federal MediCaid law does not authorize ADHS to assert a lien on Ahlborn's settlement in an amount exceeding $35,581.47, and the federal anti-lien provision affirmatively prohibits it from doing so." (*Id.* at p. 292.)

E. *Applicability of* Ahlborn

Plaintiff reads *Ahlborn, supra,* 547 U.S. 268 as mandating that the formula used in that case—the ratio of the settlement to the total claim, applied to the Medicaid benefits provided—must also be used in this case. DHS counters

that *Ahlborn* did not mandate the use of any formula; that instead the formula used in *Ahlborn* was the product of the parties' stipulation; and that because there is no stipulation as to the percentage of the tortfeasor's liability in this case, the *Ahlborn* formula is inapplicable here.

◾ In *Bolanos v. Superior Court* (2008) 169 Cal.App.4th 744 [87 Cal.Rptr.3d 174] (*Bolanos*), the plaintiff and DHS made similar contentions as to the effect of *Ahlborn, supra*, 547 U.S. 268 on the Medicaid lien imposed on the third party settlement in that case. In rejecting the respective contentions of both parties, the court in *Bolanos* explained that "*Ahlborn* has three aspects to it. First, the state is entitled only to that portion of the settlement that compensates for past medical expenses. Second, this means that the state is not automatically entitled to the entire settlement, even if the claim for reimbursement exceeds the settlement . . . . [¶] . . . [¶] Third, we come now to the aspect of *Ahlborn* that addresses how to allocate medical and nonmedical damages in an otherwise unallocated settlement. We have already set forth how the parties went about this task in *Ahlborn*; the ratio of the settlement to the total claim, when applied to the benefits provided by ADHS, yielded $35,581. (See p. 752, *ante*.) One very direct indication of the court's approval of the approach followed by the parties in *Ahlborn* is the court's unequivocal conclusion that ADHS was entitled to no more than $35,581. (*Ahlborn, supra*, 547 U.S. at p. 292.)" (*Bolanos, supra*, 169 Cal.App.4th at pp. 752–753, fns. omitted.)

The court in *Bolanos, supra*, 169 Cal.App.4th 744 said with respect to the facts in that case, the "fundamental point is that a settlement that does not distinguish between past medical expenses and other damages must be allocated between these two classes of recoveries. Without such an allocation, the principle set forth in *Ahlborn*, that the state cannot recover for anything other than past medical expenses, cannot be carried into effect. In *Ahlborn*, ADHS conceded that if a jury or a judge had allocated a specific sum for medical expenses, ADHS 'would be entitled to reimburse itself only from the portion so allocated.' (*Ahlborn, supra*, 547 U.S. at p. 282, fn. 12.) The court went on to find: 'Given the stipulation between ADHS and Ahlborn, there is no textual basis for treating the settlement here differently from a judge-allocated settlement or even a jury award; all such awards typically establish a third party's "liability" for both "payment for medical care" and other heads of damages.' (*Ibid.*) In other words, an allocation between past medical and other expenses or damages may be made by the judgment itself. If there is no such allocation, as in a settlement, the parties must attempt to allocate; if they cannot agree, they must turn to the court. (See pp. 755–756, *post*, citing § 14124.76, subd. (a).)" (*Bolanos, supra*, 169 Cal.App.4th at p. 753.)

But, as the court in *Bolanos, supra,* 169 Cal.App.4th 744 recognized, the formula used in *Ahlborn, supra,* 547 U.S. 268 is not the only formula that may be used in cases where there is no allocation of damages by verdict, judgment, or stipulation. "This is not to say that the *Ahlborn* formula is the only one to be followed; there is nothing in that decision that compels this. *What matters is that past medical expenses are distinguished in the settlement from other damages on the basis of a rational approach*; it may be that the parties can reach an agreement without recourse to the *Ahlborn* formula. In fact, subdivision (a) of [Welfare and Institutions Code] section 14124.76 urges the parties to do so. (See p. 755, *post.*)" (*Bolanos, supra,* 169 Cal.App.4th at p. 754, italics added.)

Accordingly, the court in *Bolanos, supra,* 169 Cal.App.4th 744 concluded as follows: "We agree that *Ahlborn* itself does not require the application of the precise formula used in that case, although we do not think this approach, which has the Supreme Court's approval, should be abandoned lightly. We do not agree, however, that *Ahlborn* did not 'consider' the formula—its decision in the case was based on the results of the formula—nor do we agree that *Ahlborn* is of no consequence when it comes to a settlement that has not been allocated between past medical expenses and other damages." (*Bolanos, supra,* 169 Cal.App.4th at p. 761.)

The court in *Bolanos, supra,* 169 Cal.App.4th 744, distinguished the decisions in *Espericueta, supra,* 164 Cal.App.4th 615 and *McMillian v. Stroud* (2008) 166 Cal.App.4th 692 [83 Cal.Rptr.3d 261]. According to the court in *Bolanos,* "*McMillian* is identical to *Espericueta* to the extent that both cases involve final decisions approving settlements and belated attempts to undo those decisions. Thus, both *Espericueta* and *McMillian* stand for the proposition that settlements that have received the court's final approval cannot be undone on the mere mention of *Ahlborn.* A contrary rule would produce nothing but chaos." (*Bolanos, supra,* 169 Cal.App.4th at p. 760, italics omitted.) Moreover, in *McMillian,* the court held that the plaintiff, by not introducing any significant evidence of medical payments, failed to sustain his burden of proof to show that the portion of the settlement representing medical payments was less than the amount allowed for the lien. Here there was no such failure of proof.

DHS attempts to distinguish *Ahlborn, supra,* 547 U.S. 268 because factual stipulations were used in that case. But in *Ahlborn,* the state agency asserting the lien conceded that if a judge or jury had allocated medical payments out of a larger award, the agency could only seek reimbursement from the portion so allocated. (*Id.* at p. 282, fn. 12.) The Supreme Court also noted that the stipulations in that case were the same as if a trial judge had determined the amount of the plaintiff's damages and that she could recover only one-sixth

of those damages. (*Id.* at p. 280, fn. 10.) Here, instead of stipulations concerning the value of plaintiff's damages and the percentage of the settling defendant's liability, there are findings as to the value of plaintiff's damages and the reasonableness of the settlement amount in light of those damages. Those findings, like the stipulations in *Ahlborn*, provide a factual basis upon which to make an allocation as to past medical damages. Thus, contrary to DHS's assertion, the absence of party stipulations in this case does not render *Ahlborn* inapplicable here.

■ The trial court found that the total value of plaintiff's claim was $14,077,177; that the value of the settlement—$950,000—was reasonable under the circumstances of this case; and that the amount of plaintiff's past medical costs was $435,395. Nevertheless, it made no attempt to determine the portion of the settlement that should be allocated to past medical expenses. Instead, it determined that DHS was entitled to recover the entire amount of its lien, less statutory deductions, from the total amount of the settlement proceeds. In doing so, the trial court ignored its own findings, including its finding that settling a $14 million claim for $950,000 was reasonable under the circumstances presented.

Absent a determination of the settlement proceeds allocable to plaintiff's various categories of damages, it cannot be ascertained whether DHS's lien is being imposed upon amounts paid in settlement for damages other than plaintiff's past medical costs. As discussed above, the imposition of the DHS lien on amounts allocable to damages other than past medical expenses would contravene the mandate in *Ahlborn, supra,* 547 U.S. 268 that Medicaid liens cannot extend to settlement proceeds earmarked for other types of damages, such as pain and suffering or lost income.

Based on the holding in *Ahlborn, supra,* 547 U.S. 268, we conclude that the trial court was required to distinguish past medical benefits in the settlement from other categories of damage using a rational approach that takes into consideration the trial court's various findings, including its findings concerning the total value of plaintiff's damages and the reasonableness of the settlement amount in light of those total damages. This latter finding—which, as all the other findings, is not challenged on appeal—establishes that the trial court concluded it was reasonable under the circumstances for plaintiff to compromise her $14 million claim for a fraction of its value, i.e., the reasonable settlement value of plaintiff's claim against the physician defendant was 6.75 percent of the total monetary damages she incurred. Notwithstanding that finding, the trial court, in violation of the principles set forth in *Ahlborn*, failed to determine the portion of the

settlement proceeds allocable to past medical expenses and instead allowed DHS to recover the entire amount of its lien, less attorney fees and costs.

## F. *Allocation*

In *Bolanos, supra,* 169 Cal.App.4th 744, because the trial court did not make findings concerning the total amount of the plaintiff's damages, the Court of Appeal remanded the matter to the trial court to make such findings and to determine the appropriate portion of the settlement proceeds to allocate to past medical expenses. (*Id.* at p. 762.) Here, however, the trial court made findings concerning the reasonableness of plaintiff's "assessment" of her total damages and the reasonableness of the $950,000 settlement amount in light of those damages. Those findings were sufficient to allow the trial court to allocate an amount attributable to past medical expenses. As noted, the trial court erred in failing to allocate damages as contemplated under *Ahlborn, supra,* 547 U.S. 268. As a result, its ruling on plaintiff's motion to extinguish must be reversed and remanded to allow the trial court to make the required allocation using a fair and equitable methodology.

Based on the unchallenged findings of the trial court, plaintiff's computation using a ratio of 6.75 percent to reduce the amount of past medical expenses appears to be a fair approach to the allocation issue. Because the issue was not briefed below or on appeal, however, it is unclear whether there are other equitable ways to make an appropriate allocation.[19] Accordingly, on remand, the trial court should, after allowing the parties to be heard on the method for allocating the amount of the settlement proceeds attributable to past medical expenses under the facts of this case, make the required allocation.

## G. *Future Medical Costs*

DHS asserts that under *Ahlborn, supra,* 547 U.S. 268, it is entitled to a lien on that portion of the settlement proceeds allocable to past *and* future medical costs. Under plaintiff's computation of her damages, which calculation the trial court accepted, the future medical costs were approximately $13 million and represented the vast majority of plaintiff's total damages. Thus, even under plaintiff's allocation method, DHS would recover a far greater portion of its lien because the 6.75 percent ratio she used would be applied to over

---

[19] We note that Welfare and Institutions Code section 14124.76, subdivision (a) now requires that "[a]ll reasonable efforts shall be made to obtain the director's advance agreement to a determination as to what portion of a settlement, judgment, or award that represents payment for medical expenses, or medical care, provided o[n] behalf o[f] the beneficiary." By following this legislative directive, the parties may be able to obviate the need for further briefing and a hearing on the allocation issue.

$13 million in total medical expenses, not just the $435,395 in past medical expenses paid by DHS on her behalf. Presumably, DHS bases this argument on the assumption that it will be responsible for all or a substantial portion of plaintiff's future medical expenses.

DHS's contention in this regard is unsupported by authority; *Ahlborn, supra,* 547 U.S. 268, does not squarely address the issue, but appears to assume that the lien rights under discussion there related to amounts *actually paid* by the state agency on the Medicaid recipient's behalf. Even assuming, however, that DHS's contention concerning future medical expenses has arguable legal merit, it lacks factual support. The record contains no evidence on the issue of DHS's responsibility for future medical expenses, much less a commitment by DHS to pay such expenses, and the trial court made no findings on the issue. Thus, regardless of its legal merit, we reject the contention concerning future medical expenses because of the lack of factual support. We do not reach the issue of whether DHS could theoretically impose a valid lien on medical expenses it may be required to pay in the future.

### H.  *Amendments to Welfare and Institutions Code Section 14124.76*

Plaintiff argues that Welfare and Institutions Code section 14124.76, which was amended shortly after the trial court entered its written nunc pro tunc order denying her motion to extinguish, should be applied retroactively to this case. According to plaintiff, the amendments to that section[20] confirm the trial court's obligation to make an allocation of the amount of the settlement proceeds attributable to her past medical benefits.

Based on our conclusion that *Ahlborn, supra,* 547 U.S. 268, required the trial court to make an allocation to past medical expenses, we do not need to reach the retroactivity question. Nevertheless, with respect to settlements that do not allocate portions of the proceeds to categories of damages, the amendments in issue now require a trial court to make an allocation concerning past medical benefits and that, in making that allocation, "the court shall be guided by the United States Supreme Court decision in [*Ahlborn, supra,* 547 U.S. 268] . . . ." (Welf. & Inst. Code, § 14124.76, subd. (a).) Thus, even assuming that the amended statute should be applied retroactively to the trial court's order denying the motion to extinguish, it would require the same application of *Ahlborn* to the facts of this case that we have already undertaken and result in the same outcome.

---

[20] Welfare and Institutions Code section 14124.76, subdivision (a) is quoted in footnote 14, *ante,* and section 14124.76, subdivision (b) is quoted in footnote 13, *ante.*

## DISPOSITION

The trial court's order denying the motion to extinguish is reversed and remanded with instructions to the trial court, after hearing from the parties, to grant plaintiff's motion to extinguish the DHS lien to the extent it exceeds the amount the trial court determines should be allocated to past medical expenses. Plaintiff is awarded her costs on appeal.

Turner, P. J., and Kriegler, J., concurred.