Filed 9/28/22 Opinion following rehearing

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| DANIEL C., a Minor, etc.,<br><br>      Plaintiff and Appellant,<br><br>      v.<br><br>WHITE MEMORIAL MEDICAL CENTER et al.,<br><br>      Defendants;<br><br>STATE DEPARTMENT OF HEALTH CARE SERVICES,<br><br>      Claimant and Respondent. | B308253<br><br>(Los Angeles County Super. Ct. No. BC585574) |

      APPEAL from an order of the Superior Court of Los Angeles County, Robert S. Draper, Judge.  Reversed with directions.

      Steven B. Stevens; Law Offices of Martin Stanley and Martin Stanley, for Plaintiff and Appellant.

      Rob Bonta, Attorney General, Cheryl L. Feiner, Assistant Attorney General, Richard T. Waldow, Gregory D. Brown and

Cristina M. Matsushima, Deputy Attorneys General, for Claimant and Respondent.

———————————

Appellant Daniel C. (Daniel) is a severely disabled child whose congenital abnormalities were undetected during his mother's pregnancy until after viability. Daniel sued various medical providers for wrongful life, settling with one, Dr. Kathryn Shaw, in 2018. The California Department of Health Care Services (DHCS) asserted a lien on Daniel's settlement to recover what DHCS paid for his medical care through the state's Medi-Cal program, and the trial court awarded DHCS the full amount of the lien.

We reverse. As we discuss, we reject Daniel's contentions that DHCS's lien is preempted by federal law and that there is no substantial evidence that Daniel's settlement included payments for past medical expenses. However, we find that the trial court erred by failing to distinguish between past medical expenses and other damages, and to apportion the settlement accordingly. We therefore will reverse and remand to the trial court to make the required findings and allocation.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. Background.

Daniel was born on May 12, 2012, with profound mental and physical disabilities. He has severe cognitive and developmental impairments, is completely blind, and suffers significant hearing loss. At the age of five years, he was unable to stand independently because of skeletal abnormalities and is

2

not expected ever to walk independently. He receives all of his nutrition through a gastrostomy tube because of difficulty swallowing. He is completely dependent on others for his daily care, including feeding, dressing, toileting, hygiene, and mobility, and he is unlikely to experience any meaningful improvement.

Through his mother and guardian ad litem, Rebecca Gutierrez, Daniel filed a wrongful life suit against his mother's prenatal health care provider, Dr. Shaw, alleging she negligently failed to diagnose serious abnormalities in his spine and bones that were evident on his ultrasound.[1] Daniel settled his action against Dr. Shaw in April 2018 for $1,250,000, subject to court approval.

## B.    Court approval of settlement; DHCS lien.

Since Daniel's birth, DHCS has paid for his medical care through the California Medical Assistance Program, known as Medi-Cal. In March 2018, Daniel's counsel notified DHCS of the pending lawsuit, and in April 2018, DHCS notified counsel of its right to assert a lien against any third party settlement or judgment.

On April 16, 2019, the trial court approved the settlement with Dr. Shaw and created a special needs trust for Daniel's benefit. It further ordered that $358,117 be held in Daniel's counsel's client trust account pending a determination of DHCS's lien.

---

[1]    Daniel named several other health care providers as defendants. All except Dr. Shaw were eventually dismissed from the case and are not relevant to this appeal.

On July 6, 2020, DHCS provided a revised final lien letter, stating that it had paid $358,061 for Daniel's medical care, of which it sought to recover $229,696.[2]

### C. Daniel's motion to determine Medi-Cal lien.

Daniel filed a motion pursuant to Welfare and Institutions Code[3] section 14124.76 to determine DHCS's lien. He contended that DHCS was not entitled to any portion of his settlement because the federal Medicaid Act (42 U.S.C., § 1396p) preempted states from imposing liens on judgments or settlements recovered by Medi-Cal recipients. Alternatively, Daniel contended that his total past and future damages exceeded $13 million, and his $1.25 million settlement thus represented just about 9 percent of his total damages. Daniel argued that DHCS's recovery therefore should be limited to 9 percent of the past medical expenses paid by Medi-Cal, or $32,517, as further reduced by DHCS's proportionate share of Daniel's attorney fees and costs.

In support of his motion, Daniel submitted a declaration and life care plan prepared by Certified Nurse Life Care Planner Jennifer Craigmyle. Craigmyle stated that Daniel's mother currently provided all of his daily care; although Daniel had been

---

[2] Under California law, if DHCS does not intervene in a Medi-Cal beneficiary's claim against a third party tortfeasor, its claim for reimbursement of medical benefits is reduced by 25 percent, "which represents [DHCS's] reasonable share of attorney's fees paid by the [Medi-Cal] beneficiary," plus the department's statutory share of litigation costs. (Welf. & Inst. Code, § 14124.72, subd. (d).)

[3] All subsequent undesignated statutory references are to the Welfare and Institutions Code.

4

approved for in-home supportive services and respite care, his mother had difficulty finding nurses to provide the care Daniel required. Craigmyle stated Daniel's life expectancy was 35 to 40 years from his current age, and she created a detailed life care plan identifying the care and equipment he would need throughout his life, including medical care, attendant care, fiduciary and conservator fees, educational assessments, medical supplies, durable medical equipment, and physical and occupational therapy. Craigmyle also provided estimates of the costs of this care and equipment.

Daniel also submitted the declaration of economist David Fractor, which calculated the present value of Daniel's future needs. Fractor opined that the present value of Daniel's future care was $13.4 million.

### D. DHCS's opposition to motion.

DHCS opposed Daniel's motion. It asserted that its lien was not preempted by the Medicaid Act; to the contrary, the Medicaid Act required it to take all reasonable measures to seek reimbursement from third party tortfeasors for care and services paid through the Medi-Cal program. With regard to the amount of the lien, DHCS acknowledged that its reimbursement was limited to the portion of the settlement representing medical expenses, and that its recovery was further limited by 25 percent to account for its reasonable share of attorney fees. DHCS urged, however, that because Daniel's settlement arose from a wrongful life action, it necessarily included only medical and educational damages. Daniel's life care plan claimed only $23,000 in educational expenses, and thus the remainder of the $1.25 million settlement necessarily was for medical expenses subject to DHCS's lien.

5

DHCS further asserted that while the total value of a Medi-Cal beneficiary's claim ordinarily includes both past and future medical expenses, a claim must exclude future medical expenses that Medi-Cal will cover. In the present case, Daniel is eligible for "full-scope" Medi-Cal coverage, which means he is eligible to receive all services available through the Medi-Cal program that are determined to be medically necessary. In light of Daniel's medical condition and the reasonable probability that his condition will not improve, Daniel is likely to remain eligible for this coverage throughout his life. DHCS thus contended it was entitled to recover the full amount of its Medi-Cal lien.

In support of its opposition, DHCS submitted a number of declarations, which stated as follows:

Brooke Hennessy, Chief of Financial Eligibility Unit of Policy Development Branch of DHCS's Medi-Cal Eligibility Division, stated that Daniel is eligible for full-scope Medi-Cal, meaning he is eligible to receive all services available through the Medi-Cal program that are determined to be medically necessary. He currently is receiving Medi-Cal benefits, including in-home supportive services, and is enrolled in L.A. Care, a Medi-Cal managed care plan. It is reasonably probable that Daniel will remain eligible for full-scope Medi-Cal so long as his income and resources remain at or below Medi-Cal eligibility limits.

Raquel Sanchez, Staff Services Manager in DHCS's Medi-Cal Benefits Division, stated that services are available to Medi-Cal beneficiaries through the State Plan (the formal contract between the state and federal government) and through waiver programs. For example, Medi-Cal provides home and community-based services, including skilled nursing services, to eligible individuals in their homes and in community settings.

6

"[A]ll but a few of the medical services and items enumerated within it are State Plan services available through Medi-Cal to eligible full scope Medi-Cal beneficiaries," like Daniel. Further, it is "reasonably probable" that Medi-Cal will pay for most of the medical services and medical items enumerated in Daniel's Life Care Plan, including (1) physician services, (2) durable medical equipment and medical supplies including, for example, hearing aid replacements, gastrostomy supplies, incontinence supplies, shower chairs, and wheelchairs, (3) orthotic and prosthetic appliances, (4) diagnostic testing, (5) inpatient hospital services, (6) in-home supportive services, including, for example Licensed Vocational Nurse (LVN) services, and (7) transportation. The only items in the Life Care Plan that are not available through Medi-Cal are physical and occupational therapy, with an expected lifetime cost of $83,000.

Nayeema Wani, DHCS Compliance Unit Supervisor, stated that Daniel has cognitive deficits, hearing deficits, and physical impairments, which require him to have assistance with health care needs. Due to the severity of his condition, it is unlikely that his condition will improve. The Life Care Plan states that plaintiff presently requires 16-hour caregiving assistance provided by an LVN for the next 16 years, and then 24-hour caregiving assistance provided by an LVN. Twenty-four hour in-home LVN nursing is available through the Home and Community Based Services (HCBS) waiver program, so long as Daniel chooses to apply to receive such services and the services are deemed to be medically necessary. Currently, Daniel is receiving services through the State Plan's In-Home Supportive Services program, for which he has been eligible since April 2016. Daniel also may choose to apply for other in-home and

7

community-based nursing services through the State Plan's Early Periodic Screening, Diagnostic and Treatment program. Should Daniel choose to apply for home and community-based services through HCBS waivers, nursing supervision and in-home skilled nursing services, including 24-hour LVN care, will be provided to him so long as he enrolls in such services and the services are determined to meet applicable medical necessity criteria.

### E. Daniel's reply.

In his reply, Daniel asserted that there was no evidence that any portion of his settlement was for past medical expenses; indeed, he was not aware of the amount of the lien when he entered into the settlement. Further, Daniel noted that some of his past medical expenses had been paid for by two managed care plans (for which Medi-Cal paid Daniel's premiums), not by Medi-Cal directly, and he urged that DHCS should not recover for those medical expenses. Finally, he urged, it was improper to disregard the value of his future damages on the ground that DHCS *might* make future payments, and DHCS failed to meet its burden to show that it will in fact pay for all of Daniel's future care. Although DHCS's experts' declarations describe benefits that might be available in theory, none articulated a commitment to make these payments. Daniel also asserted evidentiary objections to some of DHCS's evidence.

### F. Order granting Medi-Cal lien.

On August 10, 2020, the trial court granted DHCS's Medi-Cal lien in the amount of $229,696. The court found that both parties agreed that Daniel's past medical expenses were $358,118, and that sum should be reduced by 25 percent to account for DHCS's share of attorney fees. The court rejected

8

Daniel's contention that DHCS was entitled to recover only 9 percent of its outlay for Daniel's medical expenses, stating that "[i]f the Court were to include future costs in its calculations, the Department would be entitled to an even greater share of the recovery, based on the 'assumption that it will be responsible for all or a substantial portion of plaintiff's future medical expenses.'" The court accordingly concluded that DHCS's requested lien amount was reasonable, and that DHCS was entitled to recover on its lien in the amount of $229,696.

Daniel timely appealed from the order granting DHCS's Medi-Cal lien.[4]

## DISCUSSION

Daniel contends: (1) DHCS's lien is preempted by the federal Medicaid Act; (2) there is no substantial evidence that Daniel's settlement included payments for past medical expenses; and (3) the trial court failed to equitably allocate the settlement. We consider these issues below.

---

[4] We filed an earlier version of this opinion on May 26, 2022. On June 7, 2022, we granted rehearing on our own motion to permit the parties to submit supplemental briefs discussing the impact on this case, if any, of *Gallardo v. Marstiller* (June 6, 2022) 142 S.Ct. 1751. In reissuing this opinion, we have considered the parties' supplemental letter briefs, filed June 27, July 15, and July 28, 2022, as well as DHCS's petition for rehearing, filed June 6, 2022.

9

# I. Background

## A. The Medicaid program.

In 1965, Congress created the federal Medicaid program by enacting Title XIX of the Social Security Act (42 U.S.C. § 1396 et seq.). Medicaid is a medical assistance program for low-income individuals that is jointly funded by the federal and state governments. States' participation in the Medicaid program is optional; however, any state that chooses to participate must develop and implement a state plan that conforms to federal law. (*Harris v. McRae* (1980) 448 U.S. 297, 301.)

California has elected to participate in Medicaid by establishing the Medi-Cal program. California's implementing legislation, known as the Medi-Cal Act, is codified at section 14000 et seq. (See § 14000.4 [short title].) DHCS is the state agency charged with administering the Medi-Cal program. The Medi-Cal Act states that when benefits are provided to a Medi-Cal beneficiary because of an injury for which a third party or carrier is liable, DHCS has the right to recover from such party or carrier the reasonable value of the Medi-Cal benefits. (§ 14124.71, subd. (a).) DHCS may obtain reimbursement by filing an action directly against a third party tortfeasor, by intervening in a Medi-Cal beneficiary's action against a third party, or by filing a lien against a beneficiary's settlement, judgment, or award. (§§ 14124.71, 14124.72, 14124.73; see also *Espericueta v. Shewry* (2008) 164 Cal.App.4th 615, 622–623 (*Espericueta*); *Kizer v. Ortiz* (1990) 219 Cal.App.3d 1055, 1058–1059.) If DHCS files a lien in an action pursued by a beneficiary alone, DHCS's claim for reimbursement is reduced by 25 percent, representing its share of attorney fees, as well as by its statutory share of litigation costs. (§ 14124.72, subd. (d).) A final

10

determination of rights and obligations with respect to a Medi-Cal lien is appealable pursuant to section 14124.76, subdivision (c).

Daniel's preemption claim raises a pure question of law, which we review de novo. (*Lima v. Vouis* (2009) 174 Cal.App.4th 242, 253 (*Lima*); *Espericueta, supra,* 164 Cal.App.4th at p. 622.) We review his claims regarding the proper allocation of the settlement for an abuse of discretion. (*Lopez v. DaimlerChrysler Corp.* (2009) 179 Cal.App.4th 1373, 1387.) "The court abuses its discretion . . . where it misconceives its duty, applies an incorrect legal standard, or fails to independently consider the weight of the evidence." (*People v. Carter* (2014) 227 Cal.App.4th 322, 328.)

## B. Wrongful life claim.

A wrongful life action may be brought by a child born with a genetic defect who alleges that a physician or other health care provider negligently failed to inform the child's parents of the possibility that the child would be born with the defect. (*Turpin v. Sortini* (1982) 31 Cal.3d 220, 223, 237–239.) A child may maintain a wrongful life action when a defendant has " 'failed to diagnose and warn the parents of the probability that an infant will be born with a hereditary ailment or disability and the infant is in fact born with that ailment.' (*Foy v. Greenblott* (1983) 141 Cal.App.3d 1, 14.)" (*Barragan v. Lopez* (2007) 156 Cal.App.4th 997, 1004.) The child's claim is that but for the physician's negligence, the child would not have been born into the pain and suffering caused by his or her genetic defect. (*Ermoian v. Desert Hospital* (2007) 152 Cal.App.4th 475, 492–493 (*Ermoian*).)

"The 'resulting injury' in a wrongful life action is not the plaintiff's disease or birth defects, but the birth of the plaintiff

11

with the defect." (*Ermoian*, *supra*, 152 Cal.App.4th at p. 493.) A child who prevails on a wrongful life claim may not recover for lost earnings or general damages, including pain and suffering, but may recover special damages "for the extraordinary expenses necessary to treat the hereditary ailment from which he or she suffers." (*Galvez v. Frields* (2001) 88 Cal.App.4th 1410, 1419–1420 (*Galvez*); *Johnson v. Superior Court* (2002) 101 Cal.App.4th 869, 887–889.)

## II. DHCS's lien is not preempted by the Medicaid Act.

Daniel concedes that DHCS's lien is authorized by provisions of the Medi-Cal Act, but he contends that these provisions are preempted because they violate the "anti-lien" and "anti-recovery" provisions of the federal Medicaid Act. We disagree.

We recently addressed this issue in *L.Q. v. California Hospital Medical Center* (2021) 69 Cal.App.5th 1026 (*L.Q.*). There, we explained that the Medicaid Act includes several provisions that require states, as a condition of receiving federal Medicaid funds, to seek reimbursement for payments made on behalf of Medicaid beneficiaries who later recover from third party tortfeasors. Among other things, states must require Medicaid beneficiaries to "assign [to] the State any rights [of the beneficiary] . . . to payment for medical care from any third party" (the assignment clause). (42 U.S.C. § 1396k(a)(1)(A).) Further, states must "ha[ve] in effect laws under which, to the extent that payment has been made under the [state's Medicaid] plan for medical assistance for health care items or services furnished to an individual, the State is considered to have acquired the rights of such individual to payment by any other party for such health care items or services" (the acquisition-of-

rights clause). (42 U.S.C. § 1396a(a)(25)(H).) Finally, states must "take all reasonable measures to ascertain the legal liability of third parties . . . to pay for care and services available under the [state's Medicaid] plan," and "in any case where such a legal liability is found to exist after medical assistance has been made available on behalf of the individual and where the amount of reimbursement the State can reasonably expect to recover exceeds the costs of [obtaining] such recovery, . . . [to] seek reimbursement for such assistance to the extent of such legal liability" (the reimbursement clause). (42 U.S.C. § 1396a(a)(25)(A)–(B).)

The Act also includes provisions that prohibit states from recovering funds paid on behalf of Medicaid beneficiaries from the beneficiaries themselves. One such provision—the "anti-lien" provision—says that, except in circumstances not relevant here, "[n]o lien may be imposed against the property of any individual prior to his death on account of medical assistance paid or to be paid on his behalf under the State plan." (42 U.S.C. § 1396p(a)(1).) Another such provision—the "anti-recovery" provision—says that "[n]o adjustment or recovery of any medical assistance correctly paid on behalf of an individual under the State plan may be made, except that the State shall seek adjustment or recovery of any medical assistance correctly paid on behalf of an individual under the State plan in [circumstances not present here]." (42 U.S.C. § 1396p(b)(1).) As the Supreme Court has noted, the assignment, acquisition-of-rights, and reimbursement provisions, on the one hand, and the anti-lien and anti-recovery provisions, on the other, "exist[] in some tension" with one another. (*Wos v. E.M.A.* (2013) 568 U.S. 627, 633.)

13

In *L.Q.*, after reviewing federal case law interpreting the Medicaid Act, we agreed with DHCS that the assignment, acquisition-of-rights, and reimbursement clauses create implied exceptions to the anti-lien and anti-recovery provisions. (*L.Q.*, *supra*, 69 Cal.App.5th at p. 1046.) We noted that L.Q.'s contention that a Medicaid lien violates the anti-lien provision of the Medicaid Act assumes that a Medicaid beneficiary's recovery from a third party is the beneficiary's "property" within the meaning of 42 United States Code section 1396p(a)(1), which says that "[n]o lien may be imposed against *the property of* any individual prior to his death on account of medical assistance paid or to be paid on his behalf under the State plan." (Italics added.) But the assignment clause mandates that states require Medicaid beneficiaries to "assign [to] the State any rights [of the beneficiary] . . . to payment for medical care from any third party," and the acquisition-of-rights clause requires states to "ha[ve] in effect laws under which, to the extent that payment has been made under the State plan for medical assistance for health care items or services furnished to an individual, the State is considered to have acquired the rights of such individual to payment by any other party for such health care items or services." (42 U.S.C. §§ 1396k(a)(1)(A), 1396a(a)(25)(H).) We therefore concluded that, "[t]aken together, these provisions give *the state*, not the Medicaid beneficiary, the right to recover damages from third parties for past medical expenses. To the extent, therefore, that the beneficiary recovers damages for past medical expenses from a third party as part of a settlement or judgment, those damages belong to the state, not to the beneficiary." (*L.Q.*, at p. 1046.)

14

We further concluded that, for this reason, "a Medicaid lien against a beneficiary's recovery for medical expenses 'does not attach *to the property* of the beneficiary because the beneficiary, by statute, has to assign to the agency "any rights he or she has to seek reimbursement from any third party up to the amount of medical assistance paid." [Citations.]' Stated differently, ' "Because the injured Medicaid [beneficiary] has assigned its recovery rights to [the state agency], and [the agency] is subrogated to the rights of the beneficiary [citations], the settlement proceeds are resources of the third-party tortfeasor that are owed to [the agency]." [Citation.] The state agency therefore "steps in and puts a lien on the recovery *before it becomes the property of the Medicaid* [*beneficiary*]." ' " (*L.Q.*, *supra*, 69 Cal.App.5th at pp. 1046–1047.)

We noted, finally, that states have long imposed Medicaid liens limited to medical costs, and courts routinely have found such liens to be valid. Further, "[a]lthough Congress repeatedly has had the opportunity to amend the Medicaid Act to prohibit such liens, it has never done so." (*L.Q.*, *supra*, 69 Cal.App.5th at pp. 1048–1049, citing *Tristani v. Richman* (3d Cir. 2011) 652 F.3d 360, 369, fn. 10; *Martinez v. State Dept. of Health Care Services* (2017) 19 Cal.App.5th 370, 372; *Lima*, *supra*, 174 Cal.App.4th at p. 262.) For all of these reasons, we concluded that Congress does not consider Medicaid liens limited to medical costs to be inconsistent with the anti-lien or anti-recovery provisions of the Medicaid Act, and we thus held that "DHCS is entitled to recover the portion of [a] plaintiff's settlement attributable to past medical care paid for by DHCS through the Medi-Cal program." (*L.Q.*, at p. 1049.)

15

We adopt our analysis in *L.Q.*, concluding, as we did there, that the provisions of the Medi-Cal Act permitting DHCS to impose a lien on Daniel's tort recovery are not preempted by federal law.

### III. The trial court did not err by concluding that Daniel's settlement included past medical expenses.

Daniel contends there is no substantial evidence that his settlement included past medical expenses; to the contrary, he urges, the settlement could *not* have included past medical expenses because at the time of the settlement negotiation, neither he nor Dr. Shaw's counsel had any information about the amount of such expenses. Moreover, Daniel says, "[n]either the parties in the settlement agreement, nor the Superior Court in its minor's compromise approval, allocated any sum to medical (or Medi-Cal) expenses."

Daniel's contention assumes that a Medi-Cal beneficiary's settlement of a tort claim includes damages for past medical expenses *only* if the beneficiary so intends—or, in other words, that the beneficiary's intended allocation of the settlement is dispositive. He cites no authority for this proposition, however, and we are aware of none. To the contrary, the Medi-Cal Act provides that DHCS "*shall have* a right to recover . . . the reasonable value of benefits" provided to a Medi-Cal beneficiary (§ 14124.71, subd. (a), italics added), and that *the court*, not the Medi-Cal beneficiary, determines what portion of a settlement is fairly allocated to satisfy DHCS's lien (§ 14124.76, subd. (a)). As DHCS notes, were the law otherwise, a beneficiary and third party tortfeasor could simply settle around DHCS's lien, to the detriment of the public fisc. (See *Arkansas Department of Health & Human Services v. Ahlborn* (2007) 547 U.S. 268, 288 (*Ahlborn*)

16

[noting that absent an agreement between a Medicaid beneficiary and state agency, the allocation of settlement proceeds shall be decided by a court to avoid "the risk that parties to a tort suit will allocate away the State's interest"].)  Daniel's subjective intentions or expectations with regard to the composition of the settlement proceeds, therefore, are irrelevant to our analysis.

## IV.  The trial court erred by failing to equitably allocate the settlement.

Daniel next contends that the trial court erred by allowing DHCS full compensation for its past medical expenses without allocating the settlement proceeds between past medical expenses and other damages.  We agree.

### A.  The *Ahlborn* decision and the California Medi–Cal Act.

In *Arkansas Department of Health & Human Services v. Ahlborn*, *supra*, 547 U.S. 268, the United States Supreme Court considered whether a state agency may impose a lien on a Medicaid beneficiary's recovery from a third party tortfeasor. *Ahlborn* was brought by a Medicaid recipient who, after suffering catastrophic injuries in a car accident, sued the alleged tortfeasors for past and future medical costs, personal injury, past and future pain and suffering, and past and future lost wages.  The case settled for $550,000, which was not allocated among the various categories of damages.  The Arkansas Department of Health Services (ADHS) imposed a lien against the settlement proceeds in the amount of $215,645, which represented the total payments made by ADHS for Ahlborn's care.  Ahlborn then filed suit seeking a declaration that ADHS's lien violated the Medicaid Act because it allowed the state to

17

claim a greater portion of the settlement than was properly attributable to her past medical expenses.[5] (*Id*. at pp. 273–274.)

The Supreme Court held that the Medicaid Act precluded ADHS from imposing a lien on any portion of Ahlborn's settlement not attributable to her medical expenses. (*Ahlborn*, *supra*, 547 U.S. at p. 280.) It noted, first, that the Medicaid Act requires recipients, as a condition of eligibility, to "assign the State any rights . . . *to payment for medical care* from any third party." (42 U.S.C. § 1396k(a)(1)(A), italics added.) By its plain language, therefore, the statute appeared to limit the state's lien to only that portion of Ahlborn's settlement attributable to medical expenses. Further, the Act prohibits states from placing a lien on "the property of any individual prior to his death on account of medical assistance paid or to be paid on his behalf under the State plan." (42 U.S.C. § 1396p(a)(1).) The court observed that, considered alone, this provision "would appear to ban even a lien on that portion of the settlement proceeds that represents payments for medical care," but Ahlborn "does not ask us to go so far." (*Ahlborn*, at p. 284.) Instead, Ahlborn "assume[d] that the State's lien is consistent with federal law insofar as it encumbers proceeds designated as payments for medical care," but urged that the anti-lien provision precluded attachment of the remainder of the settlement. The court agreed:

---

[5] The parties stipulated that Ahlborn's entire claim was reasonably valued at about $3 million, and the settlement ($550,000) was about one-sixth of that sum. The parties also agreed that if Ahlborn's construction of federal law were correct, ADHS would be entitled to only the portion of the settlement that constituted reimbursement for past medical expenses ($35,581). (*Ahlborn*, *supra*, 547 U.S. at p. 274.)

"There is no question that the State can require an assignment of the right, or chose in action, to receive payments for medical care. So much is expressly provided for by §§ 1396a(a)(25) [the reimbursement clause] and 1396k(a) [the assignment clause]. And we assume, as do the parties, that the State can also demand as a condition of Medicaid eligibility that the recipient 'assign' in advance any payments that may constitute reimbursement for medical costs. To the extent that the forced assignment is expressly authorized by the terms of §§ 1396a(a)(25) and 1396k(a), it is an exception to the anti-lien provision. [Citations.] But that does not mean that the State can force an assignment of, or place a lien on, any other portion of Ahlborn's property. As explained above, the exception carved out by §§ 1396a(a)(25) and 1396k(a) is limited to payments for medical care. Beyond that, the anti-lien provision applies." (*Id*. at pp. 284–285.)

In 2008, the California Legislature amended the state Medi-Cal Act to conform to *Ahlborn*. As relevant here, section 14124.76, subdivision (a) provides that no "settlement, judgment, or award in any action or claim by a beneficiary to recover damages for injuries, where the [DHCS] director has an interest, shall be deemed final or satisfied without first giving the director notice and a reasonable opportunity to perfect and to satisfy the director's lien." Recovery of DHCS's lien in an injured beneficiary's action or claim "is limited to that portion of a settlement, judgment, or award that represents payment for medical expenses, or medical care, provided on behalf of the beneficiary." (*Ibid.*) All reasonable efforts must be made to obtain DHCS's advance agreement to a determination as to what portion of a settlement, judgment, or award represents payment for a beneficiary's medical expenses, but if the parties cannot

19

agree, "the matter shall be submitted to a court for decision."
(*Ibid.*)  In determining what portion of a settlement, judgment, or
award represents payment for medical expenses, or medical care,
provided on behalf of the beneficiary and as to what the
appropriate reimbursement amount to the DHCS should be, "the
court shall be guided by the United States Supreme Court
decision in *Arkansas Department of Health and Human Services
v. Ahlborn* (2006) 547 U.S. 268 and other relevant statutory and
case law." (*Ibid.*)

The parties agree that under state law, DHCS may impose
a lien on only the portion of a beneficiary's settlement that
represents *past* (not future) medical expenses.[6]  However, they
disagree about the scope of the court's discretion when allocating
settlements between past medical expenses and other damages.
Because the Medi-Cal Act does not describe how courts are to
allocate settlements, we consider the approaches taken by other
appellate courts.

B.    California case law.

In *Bolanos v. Superior Court* (2008) 169 Cal.App.4th 744,
752–753 (*Bolanos*), the plaintiff brought a medical malpractice

---

[6]    In *Gallardo v. Marstiller*, *supra*, 142 S.Ct. 1751, the United
States Supreme Court held that the federal Medicaid Act permits
states to seek reimbursement from settlement payments
allocated for both past *and future* medical care, and thus that a
Florida statute that permitted the state to do so did not violate
federal law.  In supplemental briefs submitted after *Gallardo* was
decided, Daniel and DHCS agree that *Gallardo* does not control
the present appeal because California has opted to limit its
recovery to only the portion of a settlement that represents
payment for past medical expenses.

20

action against her health care providers, settling the action for $1.5 million. DHCS advised that it had spent in excess of $700,000 on the plaintiff's medical care and would impose a lien of more than $500,000 on the settlement. (*Id*. at pp. 748–749.) Over plaintiff's opposition, the trial court granted the lien in full. The Court of Appeal reversed. It noted that in *Ahlborn*, the Supreme Court approved an allocation that calculated what percentage the plaintiff's settlement was of her total claim for damages, and then permitted the state to place a lien on only that percentage of its medical care costs. (*Bolanos*, at pp. 753–754.)[7] While the *Bolanos* court noted that the *Ahlborn* formula is not the only formula that may be used to allocate settlements, it held that medical expenses must be "distinguished in the settlement from other damages *on the basis of a rational approach*." (*Bolanos*, at p. 754, italics added.) Further, the court said, "the ratio of the settlement to the total of the claim, when applied to [DHCS's] total payments to the beneficiary, is an acceptable approximation of the amount of medical expenses." (*Id*. at p. 748.)

In the case before it, the Court of Appeal found that the trial court had failed to make findings as to the plaintiff's life expectancy, her total claim, or the portion of the settlement

---

[7] For example, in *Ahlborn*, the plaintiff settled a $3 million claim for $550,000, or approximately one-sixth (about 16 percent) of the total claim. (*Ahlborn*, *supra*, 547 U.S. at p. 274.) ADHS paid approximately $215,000 for the plaintiff's care. (*Id*. at p. 273.) The parties stipulated that if ADHS could assert a lien against only the portion of the settlement attributable to past health care costs, it could recover only about $35,000 or 16 percent of its total expenditures. (*Id*. at p. 274.)

allocable to medical expenses. (*Bolanos*, *supra*, 169 Cal.App.4th at pp. 757–758.) Accordingly, it directed the trial court to vacate its order and determine "the portion of the settlement that represents payment for past medical expenses" and "the maximum amount the director may recover on the Medi-Cal lien." (*Id*. at p. 762.)

The court reached a similar conclusion in *Lima*, *supra*, 174 Cal.App.4th 242. There, the plaintiff settled a medical negligence claim against her physician for $950,000, or about 6.75 percent of her total claimed damages of $14 million. DHCS (then called the Department of Health Services (DHS)) claimed a lien of about $300,000; the plaintiff urged the trial court to reduce DHS's lien to $21,000, or about 6.75 percent of its total expenditures. (*Id*. at pp. 247–248.) The trial court concluded that the plaintiff's claimed damages were reasonable, but it nonetheless denied the plaintiff's request to reduce DHS's lien. In making this order, the trial court did not determine what portion of the settlement proceeds were allocable to the plaintiff's past medical expenses. (*Id*. at p. 246.)

The Court of Appeal reversed and remanded. It explained: "The trial court found that the total value of plaintiff's claim was $14,077,177; that the value of the settlement—$950,000—was reasonable under the circumstances of this case; and that the amount of plaintiff's past medical costs was $435,395. Nevertheless, it made no attempt to determine the portion of the settlement that should be allocated to past medical expenses. Instead, it determined that DHS was entitled to recover the entire amount of its lien, less statutory deductions, from the total amount of the settlement proceeds. In doing so, the trial court ignored its own findings, including its finding that settling a

22

$14 million claim for $950,000 was reasonable under the circumstances presented.

"Absent a determination of the settlement proceeds allocable to plaintiff's various categories of damages, it cannot be ascertained whether DHS's lien is being imposed upon amounts paid in settlement for damages other than plaintiff's past medical costs. As discussed above, the imposition of the DHS lien on amounts allocable to damages other than past medical expenses would contravene the mandate in *Ahlborn*, *supra*, 547 U.S. 268[,] that Medicaid liens cannot extend to settlement proceeds earmarked for other types of damages, such as pain and suffering or lost income.

"Based on the holding in *Ahlborn*, *supra*, 547 U.S. 268, we conclude that the trial court was required to distinguish past medical benefits in the settlement from other categories of damage using a rational approach that takes into consideration the trial court's various findings, including its findings concerning the total value of plaintiff's damages and the reasonableness of the settlement amount in light of those total damages. This latter finding . . . establishes that the trial court concluded it was reasonable under the circumstances for plaintiff to compromise her $14 million claim for a fraction of its value, i.e., the reasonable settlement value of plaintiff's claim against the physician defendant was 6.75 percent of the total monetary damages she incurred. Notwithstanding that finding, the trial court, in violation of the principles set forth in *Ahlborn*, failed to determine the portion of the settlement proceeds allocable to past medical expenses and instead allowed DHS to recover the entire amount of its lien, less attorney fees and costs." (*Lima*, *supra*, 174 Cal.App.4th at pp. 260–261.) The Court of Appeal therefore

23

reversed the trial court's ruling on the amount of the Medi-Cal lien and remanded with directions to the trial court to "make the required allocation consistent with [its] findings." (*Id*. at p. 246.)

The court considered a somewhat different allocation issue in *Aguilera v. Loma Linda University Medical Center* (2015) 235 Cal.App.4th 821 (*Aguilera*)—namely, how to allocate *future* medical and custodial care costs that may be paid by DHCS, not by a Medi-Cal beneficiary. There, the plaintiff settled a medical negligence action against her physician for $950,000, near the defendant's policy limits. (*Id*. at p. 825.) DHCS asserted a lien on the plaintiff's recovery based on the roughly $200,000 it had spent on her behalf. (*Ibid*.) The plaintiff filed a motion to determine DHCS's lien, claiming that the full value of her claim was nearly $15 million, and thus that her settlement was only about 6 percent of her total damages. Of her total damages, the plaintiff claimed approximately $200,000 for past medical costs, $1.5 million for future medical costs, and $11 million for future attendant costs. (*Id*. at pp. 825–826.) She asserted that DHCS's recovery therefore should be limited to about $10,000, or approximately 6 percent of its lien claim, based on the *Ahlborn* formula.[8] (*Id*. at p. 826.) DHCS disagreed, asserting that it

___

[8] The court explained that the *Ahlborn* formula "is the ratio of the settlement to the total claim, when applied to the benefits provided by the Department. [Citation.] Expressed mathematically, the *Ahlborn* formula calculates the reimbursement due as the total settlement divided by the full value of the claim, which is then multiplied by the value of benefits provided. (Reimbursement Due = [Total Settlement ÷ Full Value of Claim] × Value of Benefits Provided.)" (*Aguilera*, *supra*, 235 Cal.App.4th at p. 828.)

would be paying the plaintiff's future medical and attendant care expenses, and thus those expenses should be excluded from the calculation. The trial court excluded the plaintiff's future medical expenses from its determination of the plaintiff's future expected damages, but not her future attendant care expenses, from the calculation, awarding DHCS a lien of about $15,000. DHCS appealed. (*Id.* at p. 826.)

The Court of Appeal reversed with directions. While it "agree[d] in theory" with DHCS's contention that future health care expenses that would be paid by Medi-Cal should be excluded from the *Ahlborn* formula, it explained that "excluding such expenses is contingent on the Department presenting sufficient evidence that it will in fact pay [plaintiff] Ashlynn's expenses as long as she qualifies for the benefits that she is presently receiving." (*Aguilera*, *supra*, 235 Cal.App.4th at pp. 831–832.) The court concluded that DHCS had failed to present such evidence because although it had submitted a declaration stating that the plaintiff's future medical and custodial care needs would be met by Medi-Cal, "[n]othing in [the] declaration suggested any expertise with regard to past or future benefit eligibility or benefit determinations," and the declarant "cited no statutes or regulations requiring that Medi-Cal pay for all her health care needs, showing that Medi-Cal paid for these expenses in the past or that it is reasonably probable Medi-Cal will pay all of these expenses in the future." (*Id.* at p. 832.)

The court concluded that it had articulated a new legal standard, and thus it remanded the case to the trial court for further proceedings, including the presentation of additional evidence by either party. It cautioned the parties that on remand, "[a]ny declarations must establish the declarant's

25

expertise in Medi-Cal benefits, funding and eligibility determinations. [Citation.] The declarations must also be supported with citations to applicable statutes or regulations regarding current Medi-Cal eligibility, the type of health care currently available under Medi-Cal, past funding to pay for such health care, and estimated future funding to pay for the type of health care at issue. Based on the evidence provided, the trial court must make a determination whether it is reasonably probable the Department will pay [the plaintiff's] future health care expenses. If the trial court makes such a finding, it is directed to exclude these expenses from its *Ahlborn* calculation." (*Aguilera*, *supra*, 235 Cal.App.4th at p. 833.)

The court cautioned, however, that predictions about the future are inherently uncertain, and it said DHCS thus should not be tasked with establishing the plaintiff's future Medi-Cal eligibility with "absolute certainty." It explained: "[Plaintiff's] future health care needs are uncertain and necessarily based on reasoned assumptions and estimates from health care professionals. Similarly, the benefits the Department will offer in the future and its future funding for these benefits is uncertain and can be based on reasonable assumptions and estimates. Stated differently, it is impossible for either party to predict the future. We believe it is unjust to require absolute certainty from the Department regarding how Medi-Cal eligibility will be determined in the future, whether Ashlynn will remain Medi-Cal eligible, what benefits it will provide in the future and whether

26

funding will exist for these future benefits. To the extent the trial court required such certainty, it erred." (*Id*. at p. 832.)[9]

### C. Analysis.

Daniel asserts the trial court erred by failing to allocate his settlement between past medical expenses and other damages as *Ahlborn* and California law require. He notes that the trial court approved the settlement of his $13.7 million claim for $1.25 million, or approximately 9 percent of the total, and he contends that the court therefore should have equitably apportioned the settlement between him and DHCS by applying the *Ahlborn* formula—that is, by permitting DHCS to recover only about 9 percent of its total expenditures, as further reduced by its statutory share of attorney fees and costs.[10]

DHCS contends that the trial court correctly determined that its requested reimbursement was reasonable and appropriate under state and federal law. It urges that the trial

---

[9]     Daniel asserts that *Aguilera*'s reasoning and holding are unsound because it "tacitly assumed that the child would be a fee-for-service Medi-Cal recipient for the foreseeable future." The *Aguilera* court manifestly did not make this assumption; to the contrary, it required DHCS to establish, based on reliable evidence, that it was reasonably likely DHCS would pay the plaintiff's future medical expenses. (*Aguilera*, *supra*, 235 Cal.App.4th at p. 833.)

[10]     In his opening brief, Daniel asserts that DHCS's share of litigation costs exceeds its share of the settlement based on past medical expenses, and thus that its net lien is "– $11,872," i.e., is less than $0. As DHCS notes, and as Daniel concedes in his reply brief, that analysis relies on a superseded version of the Welfare and Institutions Code.

27

court was not required to apply the *Ahlborn* formula, but that even if it had done so, Daniel would not have received a more favorable result because "[s]ubstantial evidence supports the trial court's finding that it is reasonably probable [DHCS] will cover the majority of [Daniel's] future medical expenses." DHCS thus argues that the trial court properly excluded future medical expenses from its calculation.

We agree with Daniel that the trial court failed to equitably allocate the settlement. Considered together, the cases discussed above establish that as a predicate to deciding how much of a Medi-Cal beneficiary's tort settlement DHCS may claim, the trial court must determine which portion of the settlement is attributable to past medical expenses, against which DHCS is entitled to collect its lien, and other damages, against which it is not. (*Bolanos, supra*, 169 Cal.App.4th at p. 753; *Lima, supra*, 174 Cal.App.4th at pp. 260–261.) In making this allocation, the trial court is not required to use the *Ahlborn* formula, but it must distinguish medical expenses in the settlement from other damages "on the basis of a rational approach." (*Bolanos*, at p. 754; *Lima*, at pp. 260–261.) And while the court may exclude future medical expenses from its calculation of DHCS's lien if it finds that it is "reasonably probable" DHCS will pay such expenses, it must make such a finding based on competent evidence. (*Aguilera, supra*, 235 Cal.App.4th at p. 833.)

In the present case, it does not appear that the trial court determined which portion of Daniel's settlement was attributable to past medical expenses, as California law requires. Its analysis was as follows:

"Welfare & Institutions Code Section 14124.76(a) provides: 'Recovery of the director's lien from an injured beneficiary's

action or claim is limited to that portion of a settlement, judgment, or award that represents payment for medical expenses, or medical care, provided on behalf of the beneficiary.'

"In this case, Plaintiffs agree with the Department that the past medical expenses were $358,118.  Under Welfare & Institutions Code section 14124.72, subdivision (d), 'If the action or claim is brought by the beneficiary alone and the beneficiary incurs a personal liability to pay attorney's fees and costs of litigation, the amount of the director's lien that is reimbursed shall be reduced by 25 percent, which represents the director's reasonable share of attorney's fees paid by the beneficiary, . . .' (Welf. & Inst. Code, § 14124.72.)

"For this case, $358,117.51 minus one quarter is $268,588.13.  The Department states, now, that it is entitled to recover $229,709.90, but that it will accept $229,696.73. Plaintiffs seek to reduce this amount to zero, largely based on calculations that include large future medical expenses. Plaintiffs argue that the Department's recovery is limited to only 9.08% of $358,118 (the requested amount) because Daniel's damages, including future damages[,] are $13,847,277[,] and his recovery of $1,250,000 is 9.08% of $13,847,277.  The Court does not agree that the caselaw supports these calculations, which in fact, seem backwards.  If the Court were to include future costs in its calculations, the Department would be entitled to an even greater share of the recovery, based on the 'assumption that it will be responsible for all or a substantial portion of plaintiff's future medical expenses.'  (See *Lima*[, *supra,*] 174 Cal.App.4th [at p.] 262.)  In fact, the case [law] generally recognizes that 'lien recovery was limited to that portion of [Plaintiff's] settlement

29

proceeds that were meant to compensate her for past medical costs.' (*Id*. at 257.)

"Accordingly, the Court finds that the Department's requested lien amount is reasonable.  The Department is to recover on its lien in the amount of $229,696.73."

This articulation of the trial court's analysis makes clear, first, that the trial court did not determine which portion of Daniel's settlement with Dr. Shaw represented past medical expenses.  Indeed, although the trial court quoted a sentence of section 14124.76, subdivision (a), which states that DHCS's recovery is limited to the portion of the settlement that represents payments for medical expenses or medical care, it nowhere made a finding as to how much of the settlement represented payment for such care.  Instead, the court's only finding was the total cost of Daniel's medical care—not how much of the *settlement* was allocable to that care.

The trial court also did not make a finding as to who—Daniel or DHCS—would pay Daniel's future medical expenses.  As we have discussed, *Aguilera* held that future health care expenses that will be paid by DHCS should be excluded from the calculation—but *only* if the trial court makes a finding that it is reasonably probable DHCS will pay such expenses.  Manifestly, the trial court made no such finding—instead, it " 'assum[ed],' " without deciding, that DHCS would pay such expenses.

The trial court, thus, appears to have made precisely the same error that was made by the trial courts in *Bolanos* and *Lima*—that is, it failed to allocate the settlement "between past medical expenses and other damages." (*Bolanos, supra*, 169 Cal.App.4th at p. 753; see also *Lima, supra*, 174 Cal.App.4th at pp. 260–261.)  As in those cases, therefore, this matter must be

remanded to the trial court to make that determination in the first instance.

DHCS contends that the trial court's failure to make the necessary finding was harmless because "nearly the entirety of [Daniel's] settlement is subject to the Department's lien" as a matter of law. It asserts: "[T]he plaintiff—child in a wrongful life action may only recover 'extraordinary, additional medical expenses that are occasioned by the hereditary ailment' and 'extraordinary expenses for specialized teaching.' [Citations.] Because [Daniel's] settlement arises from a wrongful life action, his entire settlement—as a matter of law—represents *only* medical and educational damages. . . . [Daniel] submitted evidence that he will incur $2,335 for an education advocate evaluation and $20,995.00 for education advocate annual follow-ups; the Department does not dispute these figures. The $23,330 in educational expenses are *not* medical expenses and thus [are] not subject to the Department's lien. The remaining $1,226,670 of [Daniel's] $1.25 million settlement, however, represents medical expenses subject to the Department's lien. Because the Department's recovery of $229,696.73 in satisfaction of its lien does not exceed the portion of the settlement representing medical expenses, the trial court's award complies with state law and with *Ahlborn*."

There are several problems with DHCS's analysis, the most significant of which is that it fails to distinguish between past and future medical expenses. As we have noted, plaintiff contends—and DHCS agrees—that DHCS may impose a lien only on *past* medical expenses. DHCS's assertion that the trial court was not required to allocate the settlement because it

31

consisted almost entirely of medical expenses therefore misses the mark.

DHCS further errs in asserting that as a wrongful life plaintiff, Daniel may recover only "medical expenses" and " 'extraordinary expenses for specialized teaching.' " While DHCS is correct that a wrongful life plaintiff may not recover general damages or lost earnings, a plaintiff *may* recover the "extraordinary expenses necessary to treat the hereditary ailment from which he or she suffers." (*Galvez, supra,* 88 Cal.App.4th at pp. 1419–1420.) None of the cases cited by DHCS suggests that such expenses necessarily are limited to medical and educational expenses.

DHCS errs, finally, in suggesting that we may affirm the trial court's order because substantial evidence supports the conclusion that it is reasonably probable DHCS will pay Daniel's future medical expenses. Had the trial court made such a finding, we would, of course, review that finding for substantial evidence. (E.g., *Greif v. Sanin* (2022) 74 Cal.App.5th 412, 442, [substantial evidence standard of review applied to factual findings].) But as we have said, the trial court did *not* make such a finding, instead " 'assum[ing]' " that DHCS would pay Daniel's future medical expenses. Because an allocation between past medical and other expenses is a necessary predicate to a lien determination, the trial court's failure to make such an allocation was an abuse of discretion requiring reversal. (See *Lima, supra,* 174 Cal.App.4th at p. 261; *Bolanos, supra,* 169 Cal.App.4th at p. 762.)

We note the evidence before the trial court did not compel the conclusion that all or most of Daniel's future medical expenses will be paid by DHCS. It is true, as DHCS contends,

that its declarations in opposition to Daniel's motion state that it is reasonably probable Daniel will remain eligible for full-scope Medi-Cal so long as his income and resources remain below Medi-Cal eligibility, and that it is reasonably probable that Medi-Cal will pay for most of the items enumerated in his life care plan, including physician services, durable medical equipment and medical supplies, diagnostic testing, inpatient hospital services, and inpatient supportive services, including LVN services. However, Daniel's life care plan notes that Daniel's mother currently provides all daily care for Daniel, and that although Daniel is entitled to both in-home supportive care services and respite care, his mother "has found it challenging to secure a nurse to provide respite care as the agencies nearby are not staffed to assist her." On remand, therefore, the trial court must resolve these factual disputes and determine which of Daniel's future expenses are likely to be paid by DHCS.

For all the foregoing reasons, we will reverse and remand this matter for further proceedings. On remand, the trial court shall allocate the settlement between past medical expenses, other compensable past expenses paid by plaintiff, and any future compensable medical expenses that DHCS has not demonstrated it is reasonably likely to pay. In making this allocation, the trial court is not required to use the *Ahlborn* formula, but it must distinguish past medical expenses from other damages on the basis of a rational approach. The court shall then permit DHCS to recover its lien from only that portion of the settlement reasonably allocated to past medical expenses, as reduced by

DHCS's statutory share of attorney fees and costs.  (See
§ 14124.72, subd. (d).)[11]

## DISPOSITION

The order is reversed and remanded to the trial court for
further proceedings in accordance with this opinion.  Appellant is
awarded his appellate costs.

## CERTIFIED FOR PUBLICATION



EDMON, P. J.

We concur:




LAVIN, J.




EGERTON, J.

---

[11]     We recognize that Daniel also challenges the trial court's
order on the grounds that the trial court overruled some of his
evidentiary objections and permitted DHCS to recover medical
expenses paid by managed care plans, not by DHCS directly.
Because we reverse the order in full, we do not reach these
issues.